TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
PO Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0238
Fax: (202) 305-0506
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRIENDS OF THE INYO; WESTERN WATERSHEDS PROJECT; CENTER FOR BIOLOGICAL DIVERSTY; THE SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; LEEANN MURPHY, in her official capacity as Acting Mammoth District Ranger,<br><br>Defendants. | Case No. 2:21-cv-01955<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

Introduction ................................................................................................................... 1

Argument ...................................................................................................................... 2

    I.     The Forest Service Properly Relied on CE-8 for Vegetation Clearing, Drilling, and Initial Site Reclamation and on CE-6 for Outyear Habitat Improvement ................................................................................................ 2

    II.    No Extraordinary Circumstances Exist ...................................................... 5

          a.     The Forest Service's extraordinary circumstances review was based on the correct legal standards .................................................... 6

          b.     The Forest Service's extraordinary circumstances review need not examine cumulative effects ............................................................ 7

          c.     The Forest Service reasonably found that localized, temporary impacts to sage-grouse were not an extraordinary circumstance .............. 11

          d.     The Forest Service reasonably found that groundwater impacts were unlikely and so the presence of the Owens tui chub outside the Project area was not an extraordinary circumstance ................................ 13

    III.   Plaintiffs' Remedy Argument Remains Premature ............................................... 14

Conclusion ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Alaska Ctr. for the Env't v. U.S. Forest Serv.*,
  189 F.3d 851 (9th Cir. 1999) .................................................................................. 1, 6, 14

*Allied-Signal, Inc. v. U.S. Nuclear Regul.Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ......................................................................................... 14

*Am. Wild Horse Campaign v. Bernhardt*,
  963 F.3d 1001 (9th Cir. 2020) ..................................................................................... 7, 13

*Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*,
  751 F.3d 1054 (9th Cir. 2014) ............................................................................................ 7

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
  462 U.S. 87 (1983) ........................................................................................................ 1, 7

*Cal. Communities Against Toxics v. U.S. EPA*,
  688 F.3d 989 (9th Cir. 2012) ............................................................................................ 14

*Conservation Cong. v. U.S. Forest Serv.*,
  No. 2:12–02416 WBS KJN, 2013 WL 2457481 (E.D. Cal. June 6, 2013) ................... 8, 9, 15

*Conservation Cong. v. U.S. Forest Serv.*,
  No. 2:12-02416 WBS KJN, 2016 WL 1162676 (E.D. Cal. Mar. 24, 2016) ............................ 8

*Ctr. for Biological Diversity v. Ilano*,
  261 F. Supp. 3d 1063 (E.D. Cal. 2017) ............................................................................... 7

*Ctr. for Biological Diversity v. Illano*,
  928 F.3d 774 (9th Cir. 2019) ..................................................................................... 6, 7, 11

*Ctr. for Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) ................................................................................. 8, 9, 15

*Earth Island Inst. v. Elliott*,
  290 F. Supp. 3d 1102 (E.D. Cal. 2017) ............................................................................ 3, 8

*Earth Island Inst. v. Elliott*,
  318 F. Supp. 3d 1155 (E.D. Cal. 2018) ................................................................................ 3

*Earth Island Institute v. Elliott*,
  318 F. Supp. 1102 (E.D. Cal. 2017) ..................................................................................... 3

*Friends of Endangered Species, Inc. v. Jantzen*,
  760 F.2d 976 (9th Cir. 1985) ............................................................................................... 7

*Friends of Se's Future v. Morrison*,
  153 F.3d 1059 (9th Cir. 1998) ............................................................................................. 4

*Hells Canyon Pres. Council v. Connaughton*,
  No. 3:11–cv–00023–PK, 2013 WL 665134 (D. Or. Feb. 22, 2013) ...................................... 10

*Kleppe v. Sierra Club*,
  427 U.S. 390 (1976) ............................................................................................................... 1

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) ............................................................................................................... 1

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................................... 1, 14

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ......................................................................................................... 5, 13

*Pit River Tribe v. U.S. Forest Serv.*,
  615 F.3d 1069 (9th Cir. 2010) ............................................................................................. 14

*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014) ............................................................................................... 11

*United States v. Fifty–Three (53) Eclectus Parrots*,
  685 F.2d 1131 (9th Cir. 1982) ............................................................................................. 10

*Utah Env't Cong. v. Bosworth*,
  443 F.3d 732 (10th Cir. 2006). ...................................................................................... passim

*W. Radio Servs. Co. v. Espy*,
  79 F.3d 896 (9th Cir. 1996) ................................................................................................. 10

**Regulations**

36 C.F.R. § 220.6 ....................................................................................................................... 10

36 C.F.R. § 220.6(a) ..................................................................................................................... 5

36 C.F.R. § 220.6(b)(1) ...................................................................................................... i, 5, 6

36 C.F.R. § 220.6(e)(6) ............................................................................................................ 2, 3

36 C.F.R. § 220.6(e)(8) .................................................................................................. 2, 3, 4, 12

36 C.F.R. § 228.4(a)(4) ................................................................................................................. 6

36 C.F.R. §220.6(b) ......................................................................................................... 1, 8, 9, 15

36 C.F.R. pt. 228 ............................................................................................................................ 4

40 C.F.R. § 1508.25 .................................................................................................................... 15

40 C.F.R. § 1508.27 .................................................................................................................... 10

40 C.F.R. § 1508.27(b)(7) (2019) ................................................................................................. 7

40 C.F.R. § 1508.4 (2019) ............................................................................................................ 8

43 C.F.R. § 46.215(f) .................................................................................................................. 9

# INTRODUCTION

The Long Valley Exploration Drilling Project (the Project) satisfies the Forest Service's mixed-use mandate by allowing KORE to develop its mining claims while protecting environmental resources in the Project area. Before approving the Project, the Forest Service considered the Project's impacts, as documented in the administrative record lodged with the Court. Because of the Project's small scale, limited duration, and design features, the Forest Service found no extraordinary circumstances precluded the use of its Categorical Exclusions (CEs) for short-term mineral investigations and for wildlife habitat improvement. That decision—which implicates the agency's scientific expertise—is reasonable and entitled to substantial deference. *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)); *see also Balt. Gas & Elec. Co.*, 462 U.S. at 103 ("When examining this kind of scientific determination . . . a reviewing court must generally be at its most deferential").

Plaintiffs think the Forest Service got it wrong. But they have not shown that the Forest Service "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Decision Memo and administrative record show that the Forest Service performed a thorough review, considering each of the resource conditions listed at 36 C.F.R. §220.6(b). Plaintiffs' mere disagreement goes nowhere on APA review; "[o]nce the agency considers the proper factors and makes a factual determination on whether the impacts are significant or not, that decision implicates substantial agency expertise and is entitled to deference." *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999).

The Forest Service's decision was reasonable, responsible, and satisfies the law. Plaintiffs' arguments to the contrary lack merit. This Court should deny summary judgment to Plaintiffs and grant summary judgment to Federal Defendants.

## ARGUMENT

### I. The Forest Service Properly Relied on CE-8 for Vegetation Clearing, Drilling, and Initial Site Reclamation and on CE-6 for Outyear Habitat Improvement

Federal Defendants' opening brief explained how the Forest Service's Decision Memo approves a single mineral exploration Project, which includes two phases of work. The first phase includes a suite of activities directly related to the mineral exploration: "temporary road construction, grading and constructing drill pads, . . . drilling exploration holes, driving [on] existing and temporary roads, having equipment on-site, transporting drilling muds to an approved off-forest site . . . installing erosion control measures, properly casing and abandoning drill holes, using noise and light controls, and regrading pads and replacing topsoil." AR00003. These activities are covered by the Forest Service's CE for "[s]hort-term (1 year or less)" mineral investigations at 36 C.F.R. § 220.6(e)(8). The second phase, the outyear wildlife habitat improvement work, includes these activities: "seeding, installing (sage-grouse friendly) fences around the pads to protect seedlings from livestock or wildlife grazing, monitoring revegetation activities on foot, and pulling weeds if needed." AR00003. These activities are covered by the Forest Service's CE for "[t]imber stand and/or wildlife habitat improvement activities" at 36 C.F.R. § 220.6(e)(6).

The Project's first phase—the mineral exploration activities—fits within CE-8 because the approved activities will be completed within one year or less, AR00002-03; AR00022; AR00024; AR00046; 36 C.F.R.§ 220.6(e)(8), and because the Project requires less than one mile of temporary road construction.[1] AR00002; 36 C.F.R.§ 220.6(e)(8). The Project's second phase—the outyear habitat improvement work—fits within CE-6 because the approved activities

---

[1] Here, that work is limited to clearing vegetation to reach worksites. AR00002.

do not "include the use of herbicides" and do not require any road construction. AR00003; 36 C.F.R. § 220.6(e)(6). So all Project activities are covered by the Forest Service's CEs, and absent extraordinary circumstances, the Forest Service could rely on those CEs.

In their opposition, Plaintiffs conflate *project* (an undertaking approved by the Forest Service in a decision memo) with *activities* (the individual components of a project). Pls.' Reply 2-10; *cf.* 36 C.F.R. § 220.6(e)(8) (CE that applies to "[s]hort-term (1 year or less) mineral, energy, or geophysical *investigations and their incidental support activities*" (emphasis added)); *id.* § 220.6(e)(6) (CE that applies to "[t]imber stand and/or wildlife habitat improvement *activities*" (emphasis added)). The Forest Service may satisfy NEPA for a given project by relying on different CEs for different activities. *See Earth Island Inst. v. Elliott*, 318 F. Supp. 3d 1155, 1183 (E.D. Cal. 2018) ("USFS may rely on *one or more CEs* to avoid preparing an EA or EIS for *a project*" as long as there are no extraordinary circumstances) (emphasis added); *Earth Island Institute v. Elliott*, 318 F. Supp. 1102, 1109, 1113 (E.D. Cal. 2017) (where the Bull Run Project "fit into three CEs, for road repair and maintenance (CE-4), timber stand and/or wildlife habitat improvement activities (CE-6), and post-fire rehabilitation activities (CE-11)" the court rejected plaintiffs challenge to "whether the *commercial logging activities*" fit within CE-4). And the Forest Service's decision to do so must be upheld so long as "the agency reasonably determined that *a particular activity* is encompassed within the scope of a categorical exclusion." *Mountain Communities for Fire Safety v. Elliott*, 25 F.4th 667, 690 (9th Cir. 2022) (emphasis added) (quoting *Earth Island Inst. v. Elliott*, 290 F. Supp. 3d 1102, 1114 (E.D. Cal. 2017)).

Though they now concede that the Forest Service may rely on more than one CE for a single project, Pls.' Reply 7, 10, Plaintiffs argue that the entire Project must still satisfy CE-8's one-year time limit. *See* Pls.' Reply 2, 7. But this imports CE-8's time limit into CE-6, the error the Ninth Circuit rejected in *Mountain Communities*. 25 F.4th at 679-80 (CEs do not limit the scope of other CEs). Plaintiffs' argument also defies reason. What would be the purpose of invoking multiple CEs for a project if all activities must still fit within CE-8? This is not the law, and Plaintiffs provide no authority supporting their position.

Instead, Plaintiffs continue to argue that the Forest Service's mineral regulations require the entire Project to qualify under CE-8. *See* Pls.' Reply 2-4. Plaintiffs correctly point out that the Forest Service found that the outyear work is necessary to ensure successful reclamation. *See id.* at 2-3; *see also* AR00002-03. But it does not follow that all activities must thus qualify under CE-8. Yes, the entire Project was approved under the Forest Service's regulations at 36 C.F.R. Part 228. And yes, the Forest Service may require reclamation work extending beyond a year.[2] *See* Pls.' Reply 6-7. But the Forest Service's *mineral* regulations are not the Forest Service's *NEPA* regulations. Nothing in 36 C.F.R. Part 228 expressly, or even implicitly, requires the Forest Service to approve the entire Project under CE-8. Nor do those regulations constrain the Forest Service's discretion to comply with NEPA through multiple CEs or to rely on CE-8 for only those project *activities* that meet CE-8s substantive limits. *See* 36 C.F.R. § 220.6(e)(8) (qualifying activities last one year or less and require less than one mile of road construction).

Neither does the invocation of CE-6 skirt Plaintiffs' oft-cited *Defenders of Wildlife* case. *See* Pls.' Reply 5-6. KORE has provided a helpful chart summarizing the differences between the Sunnyside Project in *Defenders* and the Project here. KORE's Br. at 20. But the most crucial is that, unlike in *Defenders*, the Forest Service's outyear work was analyzed under CE-6, not CE-8. AR00003. Plaintiffs do not dispute that the outyear work qualifies as wildlife habitat improvement, and so it is irrelevant whether that work could also have fit under CE-8. The outyear work complies with CE-6's requirements, and that ends the inquiry.

What remains are mere flyspecks. *See Friends of Se's Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998) (on NEPA review, the court should not "flyspeck" the decision based on "inconsequential, technical deficiencies"). There is no disagreement between the Forest Service and KORE on the Projects (or activities) authorized by the Decision Memo. *See* Pls.'

---

[2] The Forest Service did so here. AR00003 ("I want to be certain that adequate rehabilitation occurs, and therefore do not want to limit any activities needed for rehabilitation to a time frame of one year or less.").

Reply 5, 9.  And though the cited page on the Decision Memo should probably consistently read "post-*exploration*," *see* AR00003 (emphasis added), the Forest Service's intent to approve a single project under two CEs is unambiguous.  *See, e.g.*, AR00002 ("I have decided to authorize the exploratory drilling, as described in the proposed Plan of Operations."); AR00019-60 (discussing all aspects of the Project, including exploratory activities and outyear monitoring); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (even if there is some ambiguity in the decision, courts uphold agency decision making where "the agency's path may reasonably be discerned").  Plaintiffs also try to evade the deference owed to the Forest Service's choice of CEs, *see Mountain Communities*, 25 F.4th at 690, by arguing that the Forest Service's explanation is "post-hoc" and not entitled to deference.   Pls.' Reply 4.  But the decision to rely on the two CEs is plain on the face of the Decision Memo.  AR00003 ("The applicable category of actions for the exploration and support activities is [CE-8]"); *id.* (relying on CE-6 for outyear work "because the restoration of project disturbance is for the purpose of improving native vegetation, which is vital for wildlife habitat (including sage grouse and mule deer).").

The Forest Service may rely on multiple CEs for a single project, so long as each suite of activities falls within the substantive limits of the CE invoked for that suite of activities.  *See Mountain Communities*, 25 F.4th at 690 (9th Cir. 2022).  Here, the Forest Service reasonably relied on CE-8 for the initial road clearing, mineral investigation, and reclamation work, and on CE-6 for outyear monitoring and revegetation work.  Plaintiffs' argument that the entire Project must fit under CE-8 is wrong.  Federal Defendants are entitled to summary judgment on that claim.

**II.     No Extraordinary Circumstances Exist.**

Before using CEs, agencies must prepare a review to determine that "there are no extraordinary circumstances related to the proposed action." *Mountain Communities*, 25 F.4th at 680 (quoting 36 C.F.R. § 220.6(a)).  The Forest Service considered the resource conditions at 36 C.F.R. § 220.6(b)(1) and reasonably concluded that no extraordinary circumstances are present.

AR00004-07; AR00168-69. Those technical findings "implicate[] substantial agency expertise and [are] entitled to deference." *Alaska Ctr.*, 189 F.3d at 859. Plaintiffs' disagreements with the Forest Service's conclusions provide no basis to set aside the decision of the expert agency.

> *a. The Forest Service's extraordinary circumstances review was based on the correct legal standards.*

Federal Defendants' opening brief explained that the Forest Service's extraordinary circumstances review is limited to the resource conditions listed in the Forest Service's CE regulation and that, for protected species, the Ninth Circuit has upheld the use of a CE where "the project may affect individual [members of a species], but is not likely to result in a trend toward federal listing or a loss of viability for the species as a whole." *Ctr. for Biological Diversity v. Illano*, 928 F.3d 774, 782 (9th Cir. 2019) (internal quotation marks omitted). Plaintiffs seek to sidestep this circuit authority and advance an amorphous "possible negative impacts" standard based on dated district court opinions. Pls.' Reply 11 (citations omitted); *see also* Pls.' Reply 19 (arguing agency must show no negative impacts to resource conditions). But *Ilano* is the binding law of this circuit.

Plaintiffs also continue to conflate the Forest Service's mineral and NEPA regulations, implying that the term "significant disturbance of surface resources" under the Forest Service's mineral regulations equates to "significance" under NEPA. *Id.* at 12. If Plaintiffs were correct, every mining project that requires a plan of operations would also require an EIS, rendering CE-8 meaningless. *See* 36 C.F.R. § 228.4(a)(4). But the Forest Service determined that short-term mineral investigations (and wildlife habitat improvement activities) do not have significant environmental effects when it adopted CE-8 (and CE-6). *Utah Env't Cong.*, 443 F.3d at 741. For qualifying activities—like the ones here—the Forest Service need only consider the resource conditions at 36 C.F.R. § 220.6(b)(1), examining "the degree of the potential effect of a proposed action on these resource conditions." There are no other requirements. Not in unrelated mineral regulations, Pls.' Reply 12, not in initial reviews that mistakenly called for an EA, *id.*, and, as discussed below, not in CEQ's EIS regulations. *Id.*

Plaintiffs also quibble with the strength of the agency's conclusions. Pls.' Reply 25. In reaching those conclusions, the Forest Service analyzed the best available information and science. But, of course, "[s]ome quotient of uncertainty . . . is always present when making predictions about the natural world." *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1008 (9th Cir. 2020) (citation and internal quotation marks omitted). That uncertainty does not overcome the agency's reasonable findings that there are no extraordinary circumstances preventing the use of the CEs. *See Ctr. for Biological Diversity v. Ilano*, 261 F. Supp. 3d 1063, 1069–70 (E.D. Cal. 2017), *aff'd*, 928 F.3d 774 (9th Cir. 2019). The Forest Service's decision must be upheld so long as it "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 982 (9th Cir. 1985) (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)). As discussed in Federal Defendants' opening brief, and again below, the Forest Service's extraordinary circumstances review satisfies that standard.

   b. *The Forest Service's extraordinary circumstances review need not include cumulative effects.*

Federal Defendants' opening brief explained that CEs do not require an analysis of cumulative effects, which were already considered by the agency in adopting the category. The previous NEPA regulations required agencies preparing an EA to "consider two broad factors to determine whether an agency action may 'significantly affect' the environment [and thus require an EIS]: 'context' and 'intensity.'" *In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1068 (9th Cir. 2014) (quoting 40 C.F.R. § 1508.27 (2014)). Cumulative impacts are one of the "intensity factors" in that regulation. 40 C.F.R. § 1508.27(b)(7) (2019).

On its face, this requirement does not apply to categorical exclusions. Nor would a contrary reading make sense, as the Council on Environmental Quality's (CEQ) NEPA regulations define a "categorical exclusion" as "a category of actions which do not *individually or cumulatively have a significant effect on the human environment* and which have been found

to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. § 1508.4 (2019) (emphasis added). As recently as February, the Ninth Circuit explained that the § 1508.27 intensity factors do not apply to CEs. *Mountain Communities*, 25 F.4th at 681.

The Ninth Circuit has also held that CEQ's regulation requiring consideration of "'connected actions,' and 'indirect' and 'cumulative' environmental 'impacts' . . . . applies only to environmental impact statements," not to categorical exclusions. *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1096-97 (9th Cir. 2013). Other courts, including the Tenth Circuit and courts in this district, have likewise held that the Forest Service need not consider cumulative impacts as part of its extraordinary circumstances analysis. *Utah Env't Cong. v. Bosworth*, 443 F.3d 732, 740 (10th Cir. 2006); *Earth Island Inst.*, 290 F. Supp. 3d at 1122; *Conservation Cong. v. U.S. Forest Serv.*, No. 2:12-02416 WBS KJN, 2016 WL 1162676, at *3 (E.D. Cal. Mar. 24, 2016) ("the Forest Service does not need to address the cumulative impacts of regional projects in the abbreviated categorical exclusion process."); *Conservation Cong. v. U.S. Forest Serv.*, No. 2:12–02416 WBS KJN, 2013 WL 2457481, at *8 (E.D. Cal. June 6, 2013) ("the Forest Service's regulations do not require a cumulative impacts analysis when determining whether there are extraordinary circumstances, and plaintiff points to no applicable regulation requiring any such analysis." (citing 36 C.F.R. § 220.6(b); Forest Serv. NEPA Handbook § 31.2)).

Plaintiffs largely ignore these authorities. Instead, citing unpublished district court cases, Plaintiffs urge an imagined circuit split between the Ninth and Tenth circuits. Pls.' Reply 13-15. There is no split. Indeed, the Ninth Circuit's opinion in *Salazar* cites the Tenth Circuit's opinion in *Utah Environmental Congress* with approval. *Salazar*, 706 F.3d at 1097. Both courts recognize that CEQ's cumulative impacts requirement does not apply to CEs. *Compare Salazar*, 706 F.3d at 1096-97 (holding 40 C.F.R. § 1508.25's "'connection actions,' and 'indirect' and 'cumulative' environmental 'impacts'" analysis not applicable to CEs); *with Utah Env't Cong.*, 443 F.3d at 741 ("By definition, then, a categorical exclusion does not create a significant

environmental effect; consequently, the cumulative effects analysis required by an environmental assessment need not be performed."). And both recognize the peril of applying CEQ's EIS regulations—including the cumulative effects analysis—to CEs. *See Salazar*, 706 F.3d at 1097 ("application of section 1508.25's requirements to categorical exclusions is inconsistent with the efficiencies that the abbreviated categorical exclusion process provides" (citing *Utah Env't Cong.*, 443 F.3d at 741)).

The sole wrinkle in *Salazar* was that "[t]hough not required to do so by section 1508.25, *under BLM's own regulations*, this 'extraordinary circumstances' analysis required BLM to consider whether issuance of the gravel permit would '[h]ave a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects.'" *Salazar*, 706 F.3d at 1097 (emphasis added). Plaintiffs argue that, because the Forest Service handbook mentions cumulative effects, the Forest Service is similarly required to complete a cumulative effects analysis as part of its extraordinary circumstances review. Pls.' Reply 13-15 (citing FSH, 1909.15 § 11.6). But it was BLM's *regulations* that required consideration of cumulative impacts. *Salazar*, 706 F.3d at 1097 (citing 43 C.F.R. § 46.215(f)); 43 C.F.R. § 46.215(f) (BLM's extraordinary circumstances review must include whether the proposed action has "a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects."). The Forest Service does not have an equivalent regulation. *Conservation Congress*, 2013 WL 2457481, at *10 (BLM regulations require cumulative impacts analysis for CE, Forest Service regulations do not).

The Handbook section Plaintiffs cite discusses scoping, explaining how the level of analysis required "should be commensurate with project complexity." Forest Service Handbook § 1909.15, Ch. 31.3. Here, the record shows a thorough review of relevant resource conditions, which satisfies the agency's NEPA obligation. *See id.* Ch. 31.2 (citing 36 C.F.R. § 220.6(b)). Nothing more was required.

In any event, pronouncements in the Forest Service's manuals and handbooks lack the "force and effect of law," and so are not enforceable by this Court. *W. Radio Servs. Co. v. Espy*,

1   79 F.3d 896, 900 (9th Cir. 1996).  The Forest Service's regulations are binding on the agency
2   because they are both substantive and subject to the APA's "notice and comment" rulemaking
3   procedures.  *Id.* at 901.  But the Handbook does not purport to "prescribe substantive rules" and
4   was not subject to "procedural requirements imposed by Congress."  *Id.* (quoting *United States v.*
5   *Fifty–Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982)).   Instead, the "Manual
6   and Handbook are a series of 'procedures for the conduct of Forest Service activities" that "do[]
7   not act as a binding limitation on the Service's authority."  *Id.* at 901 (citations omitted); *see also*
8   *id.* at 902 ("Because we hold that neither the Manual nor the Handbook has the force and effect
9   of law, we review the Service's issuance of a permit *only under its binding regulations*."
10  (emphasis added)).  Cumulative effects are not part of the analysis for CEs, so the Forest Service
11  was not required to perform that analysis under its binding regulations.  36 C.F.R. § 220.6.

12      The district court cases that Plaintiff cites are error.  Pls.' Reply 13-14.  In discussing
13  cumulative impacts, the *Defenders of Wildlife* court cited 40 C.F.R. § 1508.27.  But as discussed
14  above, the Ninth Circuit has expressly held that § 1508.27 is not part of the extraordinary
15  circumstances analysis.  *Mountain Communities*, 25 F.4th at 681.  *Hells Canyon Preservation*
16  *Council v. Connaughton* commits the same misstep.  *See* No. 3:11–cv–00023–PK, 2013 WL
17  665134, at *7 (D. Or. Feb. 22, 2013).  As does *Center for Biological Diversity v. Stahn*.  This
18  error—importing EIS procedural requirements into the CE process—would swallow the
19  exclusion.  *See Utah Env't Cong.*, 443 F.3d at 740-41 noting that requiring cumulative impacts
20  analysis for a CE "would effectively render useless the purpose of categorical exclusions
21  generally").  This Court should decline to follow the nonbinding, outdated opinions in
22  *Defenders*, *Hells Canyon*, and *Center for Biological Diversity*, and should instead follow the
23  Ninth Circuit, Tenth Circuit, other courts in this district, and other district courts in this circuit in
25  holding that no cumulative impacts analysis is required when authorizing a project under a CE.
26      The Forest Service was not required to consider alleged cumulative impacts in its
27  extraordinary circumstances analysis.  Plaintiffs' arguments to the contrary fail, and Federal
28  Defendants are entitled to summary judgment on this claim.

> c. *The Forest Service reasonably found that localized, temporary impacts to sage-grouse were not an extraordinary circumstance.*

Federal Defendants' opening brief explained the Forest Service's conclusion that, though the Project may disturb sage-grouse, impacts would be limited in scope and duration, and so were not an extraordinary circumstance. AR00004-05. Because it involves the Forest Service's technical and subject-matter expertise, this conclusion receives the highest deference. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) (citations omitted).

Plaintiffs repeat their failed arguments, raising little new on reply. They again argue that the California Department of Fish and Wildlife (CDFW), Mono County, and the Town of Mammoth Lakes worried about impacts to sage-grouse. Pls.' Reply 18. But each letter was considered and informed the final Project design. *Compare* AR08060 (recommending limiting operations between March 1 and June 30); *with* AR00015 (prohibiting operation between March 1 and June 30). Likewise, Plaintiffs continue to overemphasize a single sentence from a single email sent by a single Forest Service employee. *Id.* The email states that the Project will cause disturbance to sage grouse. AR15160. The final decision acknowledges some impacts, but reasonably finds that they "will be short-term and spatially limited, so will not result in any impacts to the species that would affect [sage-grouse] viability within the project area or the Inyo National Forest." AR00005. The Project's limited scale (12 drill pads disturbing less than one total acre) and limited duration (vegetation clearing, mineral investigations, and initial reclamation complete in less than a year, with no operations during lekking season) support that conclusion. AR00001-018. Because these impacts will not impact the species' viability, the Forest Service reasonably found those impacts did not require an EA or EIS. *See Ilano*, 928 F.3d at 782; *id.* at 783 ("Plaintiffs take issue with the Forest Service's conclusion. We conclude, however, that the Forest Service considered relevant scientific data, engaged in a careful analysis, and reached its conclusion based on evidence supported by the record. Therefore, its decision was not arbitrary or capricious.").

1      Plaintiffs next challenge the sufficiency of the Forest Service's analysis, arguing that the
2 agency's conclusions are unsupported. Pls.' Reply 20, 22-23. The record details impacts to
3 biological resources, AR00150-0267, and habitat, AR00268-0314, including for sage-grouse.
4 AR00166-67, AR00169-170; *see also* AR00294-95 (maps showing sage-grouse habitat). The
5 noise report considers impacts on nearby sage-grouse leks, AR00365-0406, and the Plan of
6 Operations implements mitigation measures in response. AR00042. The Plan of Operations also
7 considered possible traffic impacts, requiring KORE to reduce vehicle speeds "in areas of
8 disturbance . . . to protect wildlife." *See* Pls.' Reply 22; AR00036-39. A CE is "a streamlined
9 process allowing minor projects to be quickly implemented." *Utah Env't Cong.*, 443 F.3d at
10 735. The Forest Service's analysis of impacts to sage-grouse more than suffices.

11      Plaintiffs remaining arguments are weaker still. They argue the Forest Service is wrong
12 to regard the area as previously disturbed because the 800 bore holes drilled during past
13 exploration "are barely visible on the landscape" and sage-grouse still use the area. Pls.' Reply
14 21. But this only supports the Forest Service's finding that the Project will not significantly
15 affect the sage-grouse. If 800 previous bore holes have not driven the sage-grouse from the area,
16 why would these 12 drill pads be any different? Plaintiffs also argue that the Project cannot be
17 characterized as "short term" because sagebrush restoration may take years. Pls.' Reply 21. But
18 the short-term requirement—which only applies to the activities approved under CE-8—is
19 defined by the duration of "mineral, energy, or geophysical investigations and their incidental
20 support activities," 36 C.F.R. § 220.6(e)(8), not by the germination of seed sown during
21 reclamation. As discussed above, all activities approved under CE-8 will be complete within a
22 year, and thus qualify as "short-term."

23      The Forest Service thoroughly considered the presence of sage-grouse within the Project
25 area, finding that some disturbance during operations would not result in significant impacts.
26 AR00004-05. That conclusion is reasonable and supported by the record. Plaintiffs' arguments
27 to the contrary lack merit. The Court should grant summary judgment to Federal Defendants on
28 this claim.

> d. *The Forest Service reasonably found that groundwater impacts were unlikely and so the presence of the Owens tui chub outside the Project area was not an extraordinary circumstance.*

Federal Defendants' opening brief explained how, because Owens tui-chub do not occur with the Project area, AR00166, and because the Project is "far from surface water," AR00168, the only possible impacts to the tui chub would be from reduced groundwater quantity or quality. *Id.* The record contains a thorough hydrogeology report that examined historical data from past drilling operations in the Project area. AR00342-364. The report explains that, while drilling operations will likely encounter groundwater, the water table's composition and the Project's design features would prevent any significant impacts. AR000343; *see also* AR00005-06. No significant groundwater impacts means no significant impacts to the tui chub. AR00168.

In their opposition, Plaintiffs argue that the Forest Service did not consider the tui chub because the Decision Memo does not directly mention the tui chub. Pls.' Reply 24. This attempted "gotcha" fails. Again, the record shows that the Forest Service considered impacts to groundwater resources, found no significant impacts, and so reasonably concluded there would be no significant impacts to tui chub. AR00168. Even if the Decision Memo were ambiguous on this point—and it is not—"the agency's path may reasonably be discerned" from the record. *Nat'l Ass'n of Home Builders*, 551 U.S. at 658.

Plaintiffs also try to turn the Project's design features against the Forest Service, arguing that mitigation would be unnecessary if groundwater impacts were not expected. Pls.' Reply 24-26. Again, the Forest Service's conclusion on this is not ambiguous. AR00005-06; AR00016-17. The extensive drilling records reviewed during the administrative process support the Forest Service's finding that artesian conditions are not present in the Project area. AR00335-364; *see also Am. Wild Horse Campaign*, 963 F.3d at 1009 (agencies may reach reasonable forecasts based on historical data). But in the unlikely event that drilling encounters artesian conditions, the Forest Service is requiring KORE to be prepared. AR00005-06. The agency's conservative approach of preparing for the unlikely does not undermine its conclusions.

1        Finally, Plaintiffs again emphasize one report of one bore hole over the last fifty years
2 that allegedly encountered artesian conditions. Pls.' Reply 27-28. The Forest Service searched
3 but could not find any records supporting this anecdote. And even in the unlikely event that
4 artesian conditions are encountered during drilling, the mitigation measures will prevent any
5 uncontrolled flow. AR00005-06; AR00016-17.
6        Plaintiffs' concerns about theoretical impacts to the tui chub are highly speculative and
7 unsupported by the record. The Forest Service considered the Project's potential impacts to
8 groundwater resources and reasonably found the Project would not result in any significant
9 impacts to groundwater quantity or quality. AR00005-06. Plaintiffs have still not identified any
10 "important aspect of the problem" that the agency overlooked. *Motor Vehicle Mfrs. Ass'n*, 463
11 U.S. at 43. Plaintiffs' bare speculation cannot overcome the deference owed to the Forest
12 Service's conclusions, *Alaska Ctr.*, 189 F.3d at 859, and this Court should grant summary
13 judgment on this claim to Federal Defendants.

14    **III.    Plaintiffs' Remedy Argument Remains Premature**.

15        Plaintiffs argue that Federal Defendants and KORE have not overcome the presumption
16 of vacatur. Pls.' Reply 29-30. But whether a court vacates an agency decision on remand
17 requires a balancing of the seriousness of the error against the disruptive consequences of
18 vacatur. *Cal. Communities Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per
19 curiam) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C.
20 Cir. 1993)). If the Court finds that the agency erred, the Court must balance the equities before
21 granting vacatur. *See Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080-81 (9th Cir.
22 2010)

## CONCLUSION

25        As explained in the Decision Memo, the Project's initial activities (vegetation clearing,
26 drilling, and work site reclamation) fall within CE-8, and the Project's outyear activities
27 (monitoring and additional revegetation as needed) fall within CE-6. Before relying on those
28 categories, the Forest Service considered the Project's impacts on the resource categories listed

at 36 C.F.R. § 220.6(b)—including on sage-grouse and on groundwater resources—and reasonably found no extraordinary circumstances precluding the use of the CEs. The Forest Service's decision was reasonable and complied with the agency's statutory and regulatory obligations. Plaintiffs' claims to the contrary fail, and so this Court should deny summary judgment for Plaintiffs and grant summary judgment for Federal Defendants.

Submitted this 16th day of May, 2022,

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Tyler M. Alexander*
TYLER M. ALEXANDER
Trial Attorney
Natural Resources Section
150 M St. NE, Third Floor
Washington, D.C. 20002
(202) 598-3314
tyler.alexander@usdoj.gov

*Attorneys for Federal Defendants*